JS 44   (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Lilia Gorovits, P.C.

**(b)** County of Residence of First Listed Plaintiff   Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Kevin E. Raphael & Alexander M. Owens
Pietragallo Gordon Alfano Bosick & Raspanti, LLP
1818 Market St., Ste. 3402, Philadelphia, PA 19103 215-320-6200

## DEFENDANTS

Secretary of DHHS, Alexander Azar & Administrator of Centers for Medicare & Medicaid Services, Seema Verma

County of Residence of First Listed Defendant   Washington, D.C.
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | **LABOR** | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
The Medicare Act, 42 U.S.C. §§ 1395 et seq. and the Administrative Procedures Act, 5. U.S.C. §§ 551 et seq.

Brief description of cause:
Appeal regarding revocation of Medicare billing privileges and related matters.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ *Reversal of cms decision*

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   N/A

DOCKET NUMBER   N/A

DATE   04/09/2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #   _____   AMOUNT   _____   APPLYING IFP   _____   JUDGE   _____   MAG. JUDGE   _____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Lilia Gorovits, P.C. | : | CIVIL ACTION |
| v. | : | |
| Azar, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( X )

| | | |
|---|---|---|
| April 9, 2020 | Alexander M. Owens | Plaintiff Lilia Gorovits, P.C. |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-988-1453 | 215-754-5184 | amo@pietragallo.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: ____ Lilia Gorovits, P.C., 1157 Mettler Rd., Huntingdon Valley, PA 19006 ____

Address of Defendant: ____ Azar (DHHS) 200 Independence Avenue, S.W. Washington, D.C. 20201; Verma (CMS), 7500 Security Boulevard, Baltimore, MD 21244 ____

Place of Accident, Incident or Transaction: ____ Philadelphia; Washington D.C. ____

---

**RELATED CASE, IF ANY:**

Case Number: ____ N/A ____    Judge: ____ N/A ____    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes [ ]   No [✓]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes [ ]   No [✓]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes [ ]   No [✓]

4. Is this a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes [ ]   No [✓]

I certify that, to my knowledge, the within case [ ] is / [■] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __ 04/09/2020 __    _____*(signature)*_____    __ 319400 __
                          *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.    Federal Question Cases:**

- [ ] 1. Indemnity Contract, Marine Contract, and All Other Contracts
- [ ] 2. FELA
- [ ] 3. Jones Act-Personal Injury
- [ ] 4. Antitrust
- [ ] 5. Patent
- [ ] 6. Labor-Management Relations
- [ ] 7. Civil Rights
- [ ] 8. Habeas Corpus
- [ ] 9. Securities Act(s) Cases
- [ ] 10. Social Security Review Cases
- [✓] 11. All other Federal Question Cases
  *(Please specify):* __ Medicare Provider Appeal __

**B.    Diversity Jurisdiction Cases:**

- [ ] 1. Insurance Contract and Other Contracts
- [ ] 2. Airplane Personal Injury
- [ ] 3. Assault, Defamation
- [ ] 4. Marine Personal Injury
- [ ] 5. Motor Vehicle Personal Injury
- [ ] 6. Other Personal Injury *(Please specify):*
- [ ] 7. Products Liability
- [ ] 8. Products Liability – Asbestos
- [ ] 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, ____ Alexander M. Owens ____, counsel of record or pro se plaintiff, do hereby certify:

- [ ] Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- [✓] Relief other than monetary damages is sought.

DATE: __ 04/09/2020 __    _____*(signature)*_____    __ 319400 __
                          *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5 2018)*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LILIA GOROVITS, M.D., P.C. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. _____ |
| v. | ) | |
| | ) | Civil Remedies Case No: |
| ALEXANDER AZAR, SECRETARY | ) | C-18-379 |
| UNITED STATES DEPARTMENT OF | ) | |
| HEALTH & HUMAN SERVICES | ) | Medicare Appeals Council Docket: |
| | ) | A-18-84 |
| AND | ) | |
| | ) | |
| SEEMA VERMA, ADMINISTRATOR | ) | |
| CENTERS FOR MEDICARE & | ) | |
| MEDICAID SERVICES | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT AND REQUEST FOR JUDICIAL REVIEW**

Lilia Gorovits, M.D., is a physician who previously operated her medical practice as Plaintiff Lilia Gorovits, M.D., P.C. (jointly referred to herein as "Dr. Gorovits"). Dr. Gorovits, by and through her undersigned counsel, brings this action against Alexander Azar, in his official capacity as the Secretary of the United States Department of Health and Human Services ("Secretary"), and Seema Verma, in her capacity as the Administrator of the Centers for Medicare and Medicaid Services ("Administrator"), to challenge certain decisions that HHS's Centers for Medicare and Medicaid Services ("CMS") made affecting Dr. Gorovits' right to bill Medicare. In support of this challenge, Dr. Gorovits states as follows:

A.   **Preliminary Statement**

1.      This action arises primarily under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq*. (the "Medicare Act") and the Administrative Procedure Act ("APA"), 5. U.S.C.

§§ 551 *et seq.*  Dr. Gorovits seeks judicial review of the final decision of the Secretary, made through CMS's Departmental Appeals Board ("DAB"), affirming the Administrative Law Judge's ("ALJ") finding that Dr. Gorovits' Medicare billing privileges were properly revoked effective March 11, 2016, and that Center for Medicare and Medicaid Services ("CMS") imposed an appropriate reenrollment bar.[1]

2.     The Secretary's final decision is contrary to law, arbitrary and capricious, and not supported by substantial evidence in violation of the Medicare Act and the APA.  As noted below, CMS's decisions, which revoked Dr. Gorovits' billing privileges and barred her from reapplying for such privileges for three years (in fact, longer than three years), were inconsistent, represented a gross misunderstanding of the factual record, violated the plain meaning of operative regulations, and violated her constitutional substantive and procedural due process rights.

**B.     Jurisdiction and Venue**

3.     This action arises under the Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.*; and the APA, 5 U.S.C. §§ 551, *et seq*.

4.     This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 1395ff(b)(1)(a), which provides for "judicial review of the Secretary's final decision after [a] hearing as is provided in section 405(g) of this title."  Section 405(g) in turn provides that "[a]ny individual, after any final decision of the [Secretary] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action

---

[1] Dr. Gorovits seeks review of only the issues set out herein and therefore does not appeal all issues she raised during the administrative process.

2

commenced within sixty days after the mailing to him of notice of such decision or within such further time as the [Secretary] may allow."  42 U.S.C. § 405(g).

5.      Jurisdiction also exists under the APA, 5 U.S.C. § 706(2), which authorizes this Court to hold unlawful and set aside agency actions, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, without observance of procedure required by law, or unsupported by substantial evidence.

6.      This Court also has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction).

7.      Venue is proper in this judicial district pursuant to 42 U.S.C. § 405(g) and 42 C.F.R. § 405.1136(b)(1) in that Dr. Gorovits' practice was located in Philadelphia, Pennsylvania, within the Eastern District of Pennsylvania, and Dr. Gorovits is currently located in Montgomery County, Pennsylvania, which is also within this District.

**C.      Parties**

8.      Plaintiff Dr. Gorovits provided medical care via Lilia Gorovits, M.D., P.C.  Dr. Gorovits is an internal medicine physician who has practiced medicine primarily in Philadelphia. Her primary place of business was located at 9869 Bustleton Ave., Unit B, Philadelphia, PA 19115.

9.      Defendant Alexander Azar is the Secretary of the United States Department of Health and Human Services ("HHS").  In that capacity, he is responsible for the conduct and policies of HHS, including the conduct and policies of the Centers for Medicare & Medicaid Services ("CMS").  Defendant Azar is sued in his official capacity only.

10.     Defendant Seema Verma is the Administrator for CMS.  In that capacity she is also responsible for CMS's policies and conduct.  Defendant Verma is sued in her official capacity only.

**D.     The Medicare Program**

11.     In 1965, Congress enacted Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.*, known as the federal Medicare program, which authorizes medical benefits for the elderly, blind, and disabled.

12.     CMS is the agency within HHS that is directly responsible for the administration of the Medicare program.

13.     Under 42 U.S.C. § 1395hh(a)(1), the Secretary is required to "prescribe such regulations as may be necessary to carry out the administration" of the Medicare program.  The Secretary has also implemented the Medicare program through guidance published in various manuals, such as the Medicare Benefits Policy Manual.

**E.     The Medicare Administrative and Judicial Review Processes**

14.     The Secretary, through regulations, has established an administrative appeal process for the review of initial determinations made by Medicare contractors (here, Novitas) under Part A and Part B of the Medicare program.  *See* 42 C.F.R. § 424.500, *et seq.*  Among the determinations subject to administrative review are determinations made by Medicare contractors as to whether a provider may be excluded from billing Medicare, the effective date of such revocation, and to what extent a provider may be barred from reenrolling in Medicare for some specific period.

15.     A party who is dissatisfied with the decision of the operative Medicare contractor may request reconsideration by CMS of the earlier decision.   42 C.F.R. §§ 424.545(a), 498.3(b)(17), 498.5(l), 498.22(a).

16.     A party dissatisfied with the reconsideration decision may then request review by one of the Secretary's Administrative Law Judges.  42 C.F.R. § 498.40.

17.      Thereafter, a dissatisfied party may request review by the Medicare Appeals Council ("MAC"), the final administrative adjudication.    42 C.F.R. §§ 498.40; 498.80, 498.82.

18.     A provider may thereafter seek judicial review of CMS's adjudication in the appropriate United States District Court, as Dr. Gorovits does here.  *See* 42 C.F.R. §§ 424.545; 498.5(i)(2); 42 U.S.C. § 405(g).

F.     **Facts**

1. **Dr. Gorovits' Practice**

19.     Dr. Gorovits has a long history of practicing medicine. She graduated from the Kiev Medical School in Ukraine.  Thereafter, she practiced as a gastroenterologist at the Kiev Hospital for approximately seven years.

20.     Following her arrival in the Unites States of America, she worked diligently to pass all the necessary exams for foreign medical graduates, obtained her license, and subsequently jointed Episcopal Hospital for her residency.

21.     Following the completion of her residency and the passing of her Boards of Internal Medicine, she started working at the Philadelphia Department of Health's free clinic Health Center Number 10.  There she cared for underrepresented individuals who lacked the means to obtain health insurance.

5

22.     Subsequently, she opened a private practice in Northeast Philadelphia (the Plaintiff entity in this action), and often provided care to the Russian and Ukrainian population in that area (as well as others), an underserved and underprivileged group. Moreover, as a Russian and Ukrainian speaker herself, she was able to communicate fluently with these patients who would otherwise struggle to speak with other physicians given the language barrier. All the meanwhile, she simultaneously worked at Kindred Hospital and Holy Redeemer Hospital.

23.     Since enrolling as a Medicare provider in 1997, Dr. Gorovits billed Medicare for the medical services she provided and received full payment without incident until the events at issue in this case.

**2.  Dr. Gorovits' Conviction & Subsequent Actions**

24.     On March 11, 2016, in the District Court for the Eastern District of Pennsylvania, Dr. Gorovits pled guilty to obstruction of a criminal investigation of health care offenses.  The conviction related to Dr. Gorovits providing misleading information to federal investigators who were investigating an alleged kickback scheme run by a hospice[2] and whether Dr. Gorovits had received illicit payments from the hospice.  Dr. Gorovits was not convicted of any underlying healthcare offense, only obstructing an investigation of healthcare offenses.  She provided substantial assistance to the government in its investigation of the hospice under scrutiny.

25.     The District Court then sentenced Dr. Gorovits to a term of probation, which she successfully completed without incident on March 10, 2019.

26.     While Dr. Gorovits was made aware of the fact that she could potentially be excluded by HHS from participating in federal healthcare programs, she was not put on notice that

---

[2] The hospice was never subject to criminal liability.

her Medicare billing privileges would be revoked (let alone retroactively) or would be subject to a subsequent bar on reenrolling in the Medicare program.

27.    Dr. Gorovits reasonably believed that any potential exclusion by HHS would be permissive and a possibility, not a foregone conclusion.   She expected that her extensive cooperation with the government would be considered by HHS-OIG.

28.    Dr. Gorovits planned to and did continue to provide medical care to Medicare patients and bill Medicare for such services until she was informed that she had been excluded from federal healthcare programs by HHS.

29.    Specifically, on June 8, 2016, HHS-OIG informed Dr. Gorovits it was possible that she would be excluded from participation in Federal health care programs, including Medicare. Then, on September 30, 2016, HHS OIG determined that Dr. Gorovits would be excluded from Federal healthcare programs.   After reviewing the September 30, 2016, correspondence, Dr. Gorovits stopped providing care to Medicare beneficiaries and stopped billing Medicare.

### 3.  The Administrative Dispute

30.    On January 26, 2017, approximately four months after Dr. Gorovits had stopped billing federal healthcare programs, Novitas (the relevant Medicare Administrative Contractor), on behalf of CMS, issued the initial decision which underlies this appeal.

31.    Through this January 26, 2017 decision, Novitas informed Dr. Gorovits that her Medicare billing privileges would be retroactively revoked effective **October 20, 2016**, pursuant to 42 C.F.R. § 424.535(a)(2) (concerning OIG-HHS's September 30, 2016, decision to exclude Dr. Gorovits from Federal healthcare programs) and pursuant to 42 C.F.R. § 424.535(a)(9)

(concerning Dr. Gorovits' alleged failure to report an adverse action within 30 days of the adverse action).  Novitas imposed a three-year reenrollment bar.

32.     Dr. Gorovits thereafter appealed the January 26, 2017, decision, through a request for reconsideration, which resulted, on June 16, 2017, in CMS issuing a reconsideration decision which affirmed the underlying revocation decision and its effective date of October 20, 2016.

33.     However, during the pendency of the January 26, 2017 reconsideration appeal, Novitas, without warning or explanation, reopened and revised its initial January 26, 2017 determination.

34.     Novitas subsequently issued a revised decision on June 6, 2017.  In the June 6, 2017, decision, Novitas added a third permissive basis for revocation under 42 C.F.R. § 424.545(a)(3) (concerning CMS's determination that Petitioner's conviction purportedly was detrimental to the Medicare program) and consequently made the revocation effective date retroactive to **March 11, 2016** (for revocations under subsection (a)(3), the revocation effective date then becomes the date of conviction), the date of Dr. Gorovits' conviction in the criminal matter.  The administrative apparatus was speaking with two voices.  CMS has never explained why its approach shifted.

35.     Given that Dr. Gorovits had provided Medicare beneficiaries with medical care (and billed Medicare for such care) between March 11, 2016 and when she was made aware of the September 30, 2016, HHS-OIG exclusion decision, the new effective date for revocation would potentially require Dr. Gorovits to return funds to the government for work she had done to treat government beneficiaries in her private practice and which was unrelated to the hospice investigation.  There is no dispute that the care provided by Dr. Gorovits in her private practice

was outstanding, and no dispute that the billing submitted to Medicare for her private practice (including during the March 11, 2016 to September 30, 2016 time period) was lawful and appropriate.

36.     Dr. Gorovits has, in fact, received overpayment demands from CMS for the March 11, 2016 to September 30, 2016 period, which are solely due to CMS's decision to amend the effective date of her billing privileges revocation.  Dr. Gorovits has appealed those overpayment demands.  Her overpayment challenges remain pending in a parallel ALJ proceeding within HHS. An adjudication here that the revocation date of Dr. Gorovits' billing privileges should return to the October 20, 2016 date would make those overpayment demands improper.

37.     Petitioner appealed the June 6, 2017, decision, and CMS issued a revised reconsideration decision in response, affirming itself.

38.     On October 26, 2017, CMS reopened the June 16, 2017, determination and revised it such that the revocation was also based on Dr. Gorovits' felony conviction and the revocation effective date was changed to March 11, 2016, essentially mending the administrative split that it had earlier created.

39.     Consequently, Dr. Gorovits filed a timely request for hearing before the Departmental Appeals Board on December 22, 2017.

40.     Following briefing by Plaintiff and CMS, the ALJ granted summary judgment in favor of CMS on April 20, 2018, once again affirming CMS's earlier adjudications.

41.     Dr. Gorovits thereafter timely appealed the ALJ's decision to the Departmental Appeals Board ("DAB").  The DAB affirmed the ALJ's findings in all relevant respects on or about February 10, 2018.

9

42.     While Dr. Gorovits' Pennsylvania medical license was earlier placed on probation by virtue of her conviction, on February 10, 2020, her license was reinstated to unrestricted, non-probationary status.

43.     Further, on March 7, 2019, Dr. Gorovits' OIG-HHS exclusion from Medicare was lifted (*i.e.*, she was "reinstated").

44.     However, the OIG HHS reinstatement is not sufficient for Dr. Gorovits to provide medical care.  Rather, Dr. Gorovits' remaining impediment to being hired as a physician is the fact that she remains prohibited from billing Medicare (and the related fact that by virtue of the March 11, 2016, retroactive billing revocation date, she owes substantial sums to CMS which will surely be garnished from any of her future billables to CMS).  Given the current state of the COVID-19 epidemic and the consequent demand for medical services, Dr. Gorovits is particularly keen to return to medical practice but is unable to do so given this impediment.

45.     All of the arguments presented in this Complaint were raised and fully preserved below.

## COUNT I - VIOLATIONS OF THE ADMINISTRATIVE PROCEDURE ACT, MEDICARE ACT, AND 42 U.S.C. § 405

## THE MEDICARE APPEALS COUNCIL ERRED AS A MATTER OF LAW BY VIRTUE OF ITS DECISION TO REVOKE DR. GOROVITS' BILLING PRIVILEGES UNDER 42 C.F.R. § 424.535(A)(3) AND THEREFORE ALSO ERRED IN IMPOSING A CONSEQUENT BILLING PRIVILEGES REVOCATION EFFECTIVE DATE OF MARCH 11, 2016.

46.     Dr. Gorovits does not challenge her revocation under the bases set out initially by CMS at 42 C.F.R. § 424.535(a)(2) (concerning OIG-HHS's decision to exclude Dr. Gorovits from Federal healthcare programs) and pursuant to 42 C.F.R. § 424.535(a)(9) (regarding the alleged

failure to report an adverse action within 30 days of the adverse action, *e.g.* exclusion).  Those revocation bases provide a revocation date effective October 20, 2016.

47.     Dr. Gorovits challenges the revocation basis under subsection (a)(3), which was used as the sole basis to apply the March 11, 2016 effective date for the retroactive revocation of her Medicare billing privileges, and thus challenges that effective date as well.

48.     Subsection (a)(3) sets out, in pertinent part, a permissible (but not mandatory) basis for revocation in certain cases of felonious conduct.  Specifically, the regulation sets out that CMS may revoke a provider's Medicare billing privileges in the case of a felony "that CMS determines is detrimental to the best interests of the Medicare program and its beneficiaries," 42 C.F.R. § 424.535(a)(3), and provides a list of certain of those felonies.

49.     The DAB determined that Dr. Gorovits was properly excluded by CMS, reasoning that her obstruction conviction was akin to the case of *Fayad v. Sebelius*, 803 F. Supp. 2d 699 (E.D. Mich. 2011), where a provider was excluded due to his attempts to *defraud* the government. Nothing in Dr. Gorovits' case has any parallels to *Fayad*.  She was not engaged in fraud at all, let alone on a government program.  CMS cannot simply point to earlier, easily distinguishable cases to supports its rationale.  *C.f. Friedman v. Sebelius*, 686 F.3d 813, 828 (D.C. Cir. 2012).

50.     The DAB also suggested that Dr. Gorovits' guilty plea shows that she violated the Anti-Kickback Statute and that supports CMS's rational.  That is clearly erroneous.  Dr. Gorovits was not convicted of violating the Anti-Kickback Statute and to the extent her guilty plea suggests that she received some improper remuneration, that alone would not, contrary to DAB's understanding, be criminal conduct.  The Anti-Kickback statute does not criminalize receipt of remuneration alone.  42 U.S.C. § 1320a-7b(b)(1).  Rather it criminalizes receipt of remuneration

11

for referrals from government healthcare programs when done *knowingly and willfully*. *Id.*; *see generally U.S. v. Davis*, 132 F.3d 1092, 1094 (5th Cir. 1998) (describing the knowing and willful prongs). Nothing in the guilty plea (which was for obstructing a health care investigation) or record establishes such behavior.

51.     To the extent that CMS posited that any crime of dishonesty or other relevant category of crime would have been a proper basis for revocation, as noted below, given CMS's inconsistent adjudications on the issue, that basis is easily rejected and is not, in any event, supported by substantial (or any) evidence.

52.     Dr. Gorovits notes that the DAB did not address the ALJ's alternative determination that Dr. Gorovits' felony was for a "financial crime and/or for a felony that placed Medicare beneficiaries at immediate risk."[3]  Of course, the DAB could not have affirmed on that basis, in any event. Nothing in the record indicates that Dr. Gorovits' *obstruction* conviction was a financial crime, let alone that she placed Medicare beneficiaries at risk. CMS's earlier reliance on that basis was thus also erroneous.

53.     Further, nothing in the DAB's adjudication establishes that, even if CMS determined that revocation was *possible* under subsection (a)(3), that CMS exercised its discretion appropriately. Subsection (a)(3) provides for permissible, not mandatory, exclusion. That discretion must be wielded in a proper, not arbitrary manner.

54.     The evidence makes clear that Dr. Gorovits had a stellar reputation and no criminal history. She provided substantial assistance to the government in its investigation of the targeted hospice. She was never put on notice that her Medicare billing privileges would be revoked. CMS

---

[3] Thus, Dr. Gorovits submits that this basis is not at issue here but addresses its merits for the sake of completeness.

provided no rationale at all as to why it would have wielded its discretion in the most draconian manner possible.

55.     CMS's adjudication is particularly troubling (and indicative of an arbitrary, capricious, unsupported, and improper adjudication) given that CMS *only* relied on subsection (a)(3) at a later date (in June 2017) and only after Dr. Gorovits exercised her rights to seek review of Novitas' initial January 2017 decisions (which were then solely related to subsection (a)(2) and (a)(9)).  Dr. Gorovits' administrative appellate rights become much less weighty when she is punished for wielding them.

56.     Pertinently, the record shows that, at the time of CMS's initial January 2017 adjudication, *Novitas actually cited to Dr. Gorovits' felony conviction* when revoking her billing privileges under (a)(2) and (a)(9) – but did not rely on subsection (a)(3) at that juncture (*i.e.*, it did not determine that the felony conviction was detrimental to Medicare, let alone that Dr. Gorovits' billing privileges should have been revoked on that basis).  In other words, if CMS felt that Dr. Gorovits' felony conviction supported revocation under subsection (a)(3), it had all the information to make that determination back in January of 2017.

57.     Even in the face of Dr. Gorovits' subsequent appeals and protests, CMS *never* explained why it suddenly – only after Dr. Gorovits appealed the subsection (a)(2) and (a)(9) January 2017 decision – determined, months later, that Dr. Gorovits' felony conviction was "detrimental to the best interests of the Medicare program and its beneficiaries" and that her billing privilege should be revoked on that basis.  This evidences that CMS's finding of "detriment" is improper and arbitrary.  If CMS truly had reason to believe that the conviction was detrimental under subsection (a)(3), it would have determined as much in January 2017 and not only after Dr.

Gorovits challenged Novitas as to other issues. The DAB suggested in its decision that CMS's change of opinion was due to CMS simply reevaluating the facts of the case. However, there is no evidence in the record (let alone substantial evidence) suggesting that CMS's change of opinion had any relation to a reevaluation of the facts of the case or the merits of CMS's approach at all. All that the record demonstrates is CMS inexplicably revising its decision, after Dr. Gorovits appealed Novitas' initial decision.

58.     Such a random, unsubstantiated, and inconsistent approach is the sort of arbitrary, capricious,[4] and factually and legally unsupported agency action that the APA and Medicare Act prohibit. This is particularly true where, as here, CMS made no attempt at all to explain its gross inconsistency (despite having multiple opportunities to do so). Citizens expect the administrative state to exert the powers that Congress has endowed upon it reasonably, predictably, fairly, and with some indicia of sound reasoning. CMS fell short of those expectations here.

59.     Prior to her conviction, Dr. Gorovits was a physician in good standing with a strong reputation, making all the more unfortunate the manner in which CMS has capriciously yielded its power. And before her billing privileges were revoked (and she was made aware of her OIG exclusion from federal healthcare program), she continued to provide expert care to Medicare patients, expecting compensation for her efforts. By arbitrarily deciding to rely on subsection (a)(3) and retroactively pushing her effective revocation date into the time period when she was still caring for Medicare patients, Dr. Gorovits is, as noted *supra*, now subject to a litany of overpayment demands from CMS which total approximately $177,000 (because one cannot

---

[4] As to all of the administrative challenges herein, Dr. Gorovits notes that the DAB erred in refusing to apply the "arbitrary and capricious" standard of review which should, in fact, apply to the case. *See Friedman v. Sebelius*, 686 F.3d 813, 828 (D.C. Cir. 2012). Under any potentially applicable standard of review, however, CMS erred.

properly bill and receive funds from CMS when one's billing privileges have been revoked, even if done retroactively).

60.     In other words, CMS's mercurial and erroneous actions here are of manifest significance.  The amount at issue would be a great financial burden to Dr. Gorovits (and is, as noted above, preventing her from practicing medicine during the COVID-19 crisis).  Meanwhile, CMS seeks to effectuate an unreasonable financial coup: allowing the agency to receive $177,000 in free care[5] from Dr. Gorovits.

61.     CMS's revocation decision, to the extent it relies on subsection (a)(3), is legally erroneous and factually unsupported and should be reversed.

62.     Dr. Gorovits should be permitted to reenroll in Medicare and her billing privileges should be determined to have been revoked effective March 11, 2016.

### COUNT II- VIOLATION OF THE DUE PROCESS CLAUSE

### DR. GOROVITS DID NOT HAVE FAIR NOTICE AND WAS PUNISHED FOR EXERCISING HER APPELLATE RIGHTS

63.     Dr. Gorovits incorporates by reference each of the foregoing paragraphs.

64.      For the same reasons set out above as well as others set out below, Dr. Gorovits' due process rights have been violated.  While the DAB asserted that it had no power to review a constitutional challenge, Dr. Gorovits maintains that the DAB could have and should have reviewed her constitutional challenges and, in any event, this Court has jurisdiction to address the matter.

---

[5] None of the care provided to the CMS beneficiaries at issue in the $177,000 overpayment demands was substandard or otherwise improper.  The overpayment demands hinge entirely on the application of a retroactively applied effective date for the revocation of Dr. Gorovits' Medicare billing privileges.

65.     Dr. Gorovits has a property interest in her participation in the Medicare program and the fact that a property interest is at issue is particularly clear here.  By virtue of the altered billing revocation date, Dr. Gorovits is subject to approximately $177,000 in overpayment demands.

66.     As Dr. Gorovits notes within (and explained during the administrative proceedings), the retroactive application of her billing privileges revocation to March 11, 2016, violated Dr. Gorovits' substantive and procedural due process rights under the United States Constitution. *See Ram v. Heckler*, 792 F.2d 444, 447 (4th Cir. 1986) ("Ram's expectation of continued participation in the [M]edicare program is a property interest protected by the due process clause of the fifth amendment.") (citing *Bowens v. North Carolina Department of Human Resources,* 710 F.2d 1015, 1018 (4th Cir.1983)); *Vencor Nursing Centers, L.P. v. Shalala*, 63 F. Supp. 2d 1, 10 (D.D.C. 1999); *but see, e.g.,Cervoni v. Sec. of Health, Ed. and Welfare*, 581 F.2d 1010, 1019 (1st Cir. 1978).

67.     As alluded to above, CMS revoked Dr. Gorovits' billing privileges without notice and then imposed a substantial retroactive revocation as well (which changed mid-administrative appeal).  Meanwhile HHS OIG, which notified Dr. Gorovits in June 2016 of a potential permissive exclusion, provided her time to respond, considered the information, and issued a final decision in September of 2016.

68.     Dr. Gorovits avers that the verbiage "[d]etrimental to the best interests of the Medicare program and its beneficiaries" in 42 C.F.R. § 424.535(3)(i) is unconstitutionally vague, on its face and as applied.

16

69.     Further, the conflicting decisions issued (*i.e.*, by providing different revocation dates and differing rationales for revocation at different times) amount to a deprivation of due process.

70.     Relatedly, and perhaps most starkly, as set out in greater detail *supra*, CMS increased the period of the retroactive billing privileges revocation only after Dr. Gorovits appealed Novitas' earlier decisions and CMS, as *noted infra*, then attempted to consequently lengthen the three-year enrollment bar beyond the three-year regulatory maximum for such a bar as well.

71.     These inexplicable increases in the retroactive revocation and reenrollment bar periods punished Dr. Gorovits for exercising her administrative and due process right to pursue her appeal.  Punishing Dr. Gorovits for exercising her appellate rights, by increasing these exclusionary periods, is a deprivation of due process.  *See, e.g.*, *Alabama v. Smith*, 490 U.S. 794, 798–99 (1989) (noting in the context of a criminal case that one's sentence cannot be increased by virtue of a defendant exercise of his or her appellate rights).

72.     This is particularly so where, as here, CMS was well aware of Dr. Gorovits' conviction at the time of its initial January 2017 determination, but only increased the billing privilege revocation period following her reconsideration appeal (thereby increasing the reenrollment bar beyond the regulatory maximum as well).

73.     CMS's decision should be reversed in all pertinent respects.  Dr. Gorovits should be permitted to reenroll in Medicare immediately and her billing privileges should be determined to have been revoked effective March 11, 2016.

**COUNT III - VIOLATIONS OF THE ADMINISTRATIVE PROCEDURE ACT, MEDICARE ACT, AND 42 U.S.C. § 405**

**THE MEDICARE APPEALS COUNCIL ERRED AS A MATTER OF LAW BY VIRTUE OF ITS INAPPROPRIATE LENGTHENING OF THE REENROLLMENT BAR**

74.     Dr. Gorovits incorporates by reference each of the foregoing paragraphs.

75.     The APA prohibits Defendants from implementing the Medicare Act in a manner that is arbitrary, capricious, an abuse of discretion, not in accordance with law and further prohibits agency action that is "without observance of procedure required by law."  5 U.S.C. § 706(2)(A), (D).  Meanwhile, the Medicare Act requires that CMS's decision be supported by substantial evidence and requires application of the correct legal standard.  42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1395ff(b)(1); *Friedman v. Sebelius*, 686 F.3d 813, 828 (D.C. Cir. 2012).  CMS's adjudication here violated these standards.

76.     CMS (through Novitas) issued its initial determination revoking Dr. Gorovits' billing privileges on January 26, 2017.  The three-year reenrollment bar began to run 30 days thereafter, and should have ended on February 25, 2020.  42 C.F.R. § 424.535(c)(1) (the start date for the reenrollment bar is 30 days after the date of the revocation decision and cannot last over three years).[6]

77.     However, because Novitas revisited and subsequently revised its initial decision on June 6, 2017 (which pushed the retroactive effective date of her revocation back from October 20,

---

[6] Dr. Gorovits notes that this regulation was amended on November 4, 2019 (increasing the maximum reenrollment bar period from three to ten years in certain cases).  As the DAB noted in its decision, because the administrative process here began before the regulation was amended, CMS's actions are subject to the pre-November 4, 2019, version of these regulations and, where the regulations substantively differ, Dr. Gorovits cites to the earlier version of the regulations.

2016 to March 11, 2016), Novitas determined that the three-year reenrollment bar *started anew*. Thus, simply due to CMS's improper decision to belatedly add a third basis for revocation, Dr. Gorovits was barred from reenrolling in Medicare for well over three years (from February 25, 2017 until July 6, 2020).

78.     As noted above, Dr. Gorovits was effectively punished for seeking review of Novitas' initial determination, as Novitas, in its June 2016 decisions, (a) pushed the effective date of her revocation back several months; and (b) started the reenrollment bar clock for a second time.

79.     For purposes of this Count, the "restarting" of the reenrollment bar is contrary to the clear language of the regulations and evinces an administrative apparatus flouting unambiguous legal mandates.  Specifically, CMS's decision unquestionably runs afoul of the three-year reenrollment bar maximum set out in 42 C.F.R. § 424.535(c)(1) which states that: "[t]he re-enrollment bar begins 30 days after CMS or its contractor mails notice of the revocation and lasts a minimum of 1 year, but not greater than 3 years, depending on the severity of the basis for revocation."  That alone is sufficient to find error.  The regulation does not state that the reenrollment bar starts again each time CMS reopens or revises a revocation decision (which is what occurred here).  Nor should it, otherwise CMS could continue to revisit its prior decisions and effectively nullify the three year maximum imposed by the regulations.  That is what happened here.

80.     The DAB found that the reenrollment bar could not be appealed, at least administratively, and that, in any event, CMS's adjudication complied with regulatory mandates.

81.     First, the matter is unquestionably subject to review both under the APA and the relevant Medicare statute and regulations. The DAB relied on 42 C.F.R. § 424.545 and 498.3.  42

19

C.F.R. § 424.545 sets out that a provider may appeal a CMS decision in accordance with part 498. Part 498 specifically covers CMS's adjudication of enrollment matters like that at issue here, where Dr. Gorovits has been denied her right to enroll in Medicare.  42 C.F.R. § 498.3(b)(17)(i).  This Court, like CMS, has the power and jurisdiction to review the issue.

82.     Further, as noted above, CMS's adjudication concerning the length and start date of the reenrollment bar itself was squarely inconsistent with the clear language of 42 C.F.R. § 424.535(c)(1) and thus the DAB erred on the merits as well, offering an unsupported adjudication that is arbitrary, capricious, and not in accordance with the law or the facts.

83.     CMS erred in the application of its reenrollment bar adjudication and Dr. Gorovits should be permitted all appropriate relief, including the immediate ability to reenroll in Medicare, a matter of utmost importance given the current viral pandemic in this country.  CMS (through its contractor Novitas) has barred, for erroneous reasons, an able-bodied physician whose medical license is in good standing from serving citizens in a city hard hit by COVID-19.

WHEREFORE, Dr. Gorovits respectfully requests an Order setting aside the Medicare Appeals Council decision, which is the Secretary's final decision, as follows:   (a) CMS's determinations regarding the billing privileges revocation under 42 C.F.R. § 424.535(a)(3), and the resulting  March 11, 2016, effective revocation date be reversed and vacated; (b) the impermissibly long reenrollment bar (extended by Novitas in June 2017 and upheld in later proceedings) be reversed and vacated; (c) a determination  that Dr. Gorovits is permitted to reenroll  in Medicare immediately; and (d) a determination that the effective date for the revocation of Dr. Gorovits' Medicare billing privileges is October 20, 2016; and (e) all other relief that this Court deems just and proper.

Respectfully submitted,

PIETRAGALLO GORDON ALFANO BOSICK &
RASPANTI, LLP

By:  _____

KEVIN E. RAPHAEL
ALEXANDER M. OWENS
I.D. No. 72673; 319400
1818 Market Street, Suite 3402
Philadelphia, PA 19103
Telephone:  215-320-6200
Facimile:  215-981-0082
KER@pietragallo.com
AMO@pietragallo.com

Date: April 9, 2020

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Plaintiff's Complaint has been served this

day of April 9, 2020, upon the following individuals via certified mail:

William M. McSwain, Esq.
United States Attorney for the Eastern District of Pennsylvania
United States Attorney's Office for the Eastern District of Pennsylvania
U.S. Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

William P. Barr, Esq.
United States Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Alexander Azar
Secretary of the U.S. Department of Health and Human Services
200 Independence Avenue, S.W.
Washington, D.C. 20201

Seema Verma
Administrator for the Centers for Medicare and Medicaid Services
7500 Security Boulevard
Baltimore, MD 21244

By:     /s/ Kevin E. Raphael
        KEVIN E. RAPHAEL
        1818 Market Street, Suite 3402
        Philadelphia, PA 19103
        Telephone:  (215) 320-6200
        Facimile:  (215) 981-0082
        KER@pietragallo.com