IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LILIA GOROVITS, M.D., P.C. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 20-1850 |
| | : | |
| XAVIER BECERRA,[1] *SECRETARY* | : | |
| *UNITED STATES DEPARTMENT OF* | : | |
| *HEALTH AND HUMAN SERVICES* | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                      **May 17, 2021**

Plaintiff Lilia Gorovits, M.D., P.C. appeals the final decision of the United States Department of Health and Human Services (HHS) which affirmed the revocation of her Medicare billing privileges and retroactively applied the revocation as of March 11, 2016, the date she pleaded guilty to a felony offense. Gorovits argues the decision is not supported by substantial evidence because it incorrectly determined that her criminal conduct was detrimental to the best interests of the Medicare program as required under the relevant regulations. She also argues the retroactive application of the revocation date deprived her of due process of law and the decision is void for vagueness. Defendant Xavier Becerra, the Secretary of HHS, contends the decision is supported by substantial evidence and Gorovits cannot show a property interest in her Medicare billing privileges. Both parties now move for summary judgment based on the administrative record from Gorovits's proceedings and appeals. Because the Secretary applied the correct law and his decision was supported by substantial evidence, and because Gorovits does not have a protected property interest in her continued participation in the Medicare program or billing

---

[1] Xavier Becerra became the Secretary of Health and Human Services on March 19, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Becerra is substituted for Alexander Azar as the Defendant in this case.

privileges, the Court will deny Gorovits's motion for summary judgment and grant the Secretary's motion for summary judgment.

**BACKGROUND**

Plaintiff Lilia Gorovits, M.D., P.C. is an internal medical practice group with Dr. Lilia Gorovits as the sole owner of that practice. Gorovits was licensed to practice medicine in the Commonwealth of Pennsylvania and operated her practice in Northeast Philadelphia. Gorovits enrolled her group as a Medicare provider on July 14, 2012. Gorovits was then permitted to bill Medicare for medical services she provided through her practice.

From 2002 to 2008, Gorovits referred patients to Home Care Hospice to receive end-of-life care. While Gorovits's patients were receiving hospice care from Home Care, she conducted home visits of the patients. For each visit, Home Care paid Gorovits $100. Over the course of six years, Gorovits received approximately $9,000 from Home Care.

In 2011, a federal investigation of health care fraud was initiated against Home Care. In May 2011, federal investigators came to Gorovits's home and asked her questions regarding Home Care. Gorovits denied receiving any payment from Home Care.

Because Gorovits lied to investigators, she was charged with obstruction of a criminal investigation of health care offenses, in violation of 18 U.S.C. § 1518. Specifically, the Government alleged Gorovits

> willfully prevented, obstructed, misled, and delayed and willfully attempted to
> prevent, obstruct, mislead and delay, the communication of information and records
> relating to a federal health care offense to federal criminal investigators in that she
> falsely denied being offered money and falsely denied receiving any money from

2

> [a hospice] to refer Medicare and Medicaid beneficiary patients to [that hospice]
>
> for hospice service.

Information, ECF No. 1 (No. 14-663, E.D. Pa.). On January 12, 2015, Gorovits pleaded guilty to

the charge. She pleaded guilty to the charge because of

> her efforts to mislead federal criminal investigators who were examining the
>
> practice of [a hospice] paying kickbacks to medical professionals, including herself,
>
> for referrals of Medicare and Medicaid eligible patients for hospice care services.

Guilty Plea Agreement, Ex. C, ECF No. 7 (No. 14-663, E.D. Pa.). On March 11, 2016, Gorovits

was sentenced and the felony judgment was entered against her. Although Gorovits was convicted

and sentenced on March 11, 2016, she did not notify the Centers for Medicare and Medicaid

Services (CMS) regarding her conviction.[2]

On June 8, 2016, the Office of the Inspector General for the U.S. Department of Health

and Human Services (OIG) sent a letter to Gorovits stating it was considering excluding her from

participating in Medicare, Medicaid, and any other federal health care programs. The OIG stated

it was considering exclusion because of Gorovits's conviction and the permissible exclusion stated

in 42 U.S.C. § 1320a–7(b)(2), which allows exclusions for any person convicted in connection

with interference or obstruction of an investigation of health care fraud. Later, on September 30,

2016, the OIG sent another letter stating its formal decision to exclude Gorovits from the health

care programs for the same reasons stated in its earlier letter. Gorovits's exclusion went into effect

on October 20, 2016.

---

[2] Pursuant to 42 C.F.R. § 424.516(d)(1)(ii), Medicare physicians are required to notify their Medicare contractors of any adverse legal action within 30 days. Gorovits was thus required to notify CMS of her conviction on or before April 10, 2016.

On January 26, 2017, Novitas Solutions (a CMS Medicare contractor) informed Gorovits that it was revoking her Medicare billing privileges based on OIG's exclusion. Novitas stated its revocation was permitted pursuant to 42 C.F.R. § 424.535(a)(2), which allows revocation when a provider is excluded from health care programs under § 1320a-7, and § 424.535(a)(9), which allows revocation when a provider fails report its OIG exclusion as stated in § 424.516(d). Novitas explained its revocation of billing privileges was effective October 20, 2016, the effective date of the OIG exclusion.[3] *See* R. at 253–55.

On June 6, 2017,[4] Novitas revised its earlier revocation and added another basis to revoke Gorovits's billing privileges. Novitas decided to revoke Gorovits's billing privileges pursuant to § 424.535(a)(3), which allows revocation if a provider is convicted of a felony offense that is determined to be detrimental to the interests of the Medicare program and its beneficiaries. Novitas also stated its revocation pursuant to § 424.535(a)(9) for failure to report included Gorovits's failure to report the felony conviction. Because the new basis for revocation was premised on Gorovits's felony conviction, Novitas stated the revocation was retroactively effective March 11, 2016, the date of the conviction pursuant to § 424.535(g), which makes revocation effective the date of the felony conviction. The new revocation date was now seven months earlier than the previous date, October 20, 2016. Novitas's revised determination superseded and replaced its earlier January 26, 2017, decision.

---

[3] Gorovits asked for reconsideration of Novitas's January 26, 2017, decision. That request was denied in a June 16, 2017, letter from CMS. This decision was superseded by an October 26, 2017, CMS decision.

[4] Novitas issued two decisions dated June 5 and June 6, 2017. The June 5 decision was applied to Gorovits as an individual, whereas the June 6 decision was applied to Gorovits as a physician group. The decisions each had a different provider number for Gorovits. The underlying decisions are nearly identical and the Court does not distinguish them further.

Following the revised decision, Gorovits requested reconsideration. On October 26, 2017, CMS upheld Novitas's revised determination to revoke Gorovits's billing privileges effective March 11, 2016. CMS stated its decision superseded Novitas's June 6, 2017, decision.

Gorovits appealed CMS's October 26, 2017, decision to an Administrative Law Judge (ALJ). Gorovits challenged CMS's decision to add the third basis for revocation (the felony conviction) and to make the revocation of her billing privileges retroactively effective as of March 11, 2016. On April 20, 2018, the ALJ granted summary judgment in favor of CMS and affirmed the earlier revocation decisions.

Gorovits appealed the ALJ's decision to the Departmental Appeals Board Appellate Division. The Board issued its decision on February 10, 2020, and determined Gorovits's felony conviction was a proper basis for revocation because it was "detrimental to the best interests of Medicare and its beneficiaries" as stated in § 424.535(a)(3)(i).[5] Although Gorovits also challenged Novitas's (and CMS's) decision to reopen and add the third basis which made revocation effective March 11, 2016, the Board only stated Novitas had continued to evaluate Gorovits's participation in Medicare and determined the third basis was necessary to protect Medicare's integrity. *See* R. at 25. The Board's decision represents the final administrative decision of Defendant Becerra as the Secretary of HHS.

On April 9, 2020, Gorovits filed the Complaint challenging the final administrative decision to revoke her Medicare billing privileges due to her felony conviction and the corresponding effective date of March 11, 2016. Gorovits filed a motion for summary judgment on September 15, 2020. She argues her felony conviction cannot be a basis for revocation because

---

[5] The Board did not address the ALJ's alternative decision that the felony conviction was a financial crime or placed Medicare beneficiaries at immediate risk pursuant to § 424.535(a)(3)(ii).

it does not qualify as a conviction as defined in § 424.535(a)(3). Specifically, she contends the ALJ and Board incorrectly determined her conviction was one that was "detrimental to the best interests of Medicare and its beneficiaries" pursuant to § 424.535(a)(3)(i). Pl.'s Mot. for Summ. J. 4–5, ECF No. 9. She also contends her conviction does not fall within one of the enumerated offenses stated in § 424.535(a)(3)(ii), such as a financial crime or one that puts beneficiaries at immediate risk. *See id.* at 7–8. Gorovits contends the revocation decision (and the regulation relied upon to revoke) is void for vagueness and deprives her of due process of law. Finally, she argues Novitas and CMS imposed the third basis for revocation to punish Gorovits for her decision to seek reconsideration of the first January 26, 2017, decision. Gorovits states the changed position (from the original two bases of revocation, to three) must be explained.

On October 15, 2020, the Secretary filed a cross-motion for summary judgment. In the motion, he opposes each of Gorovits's challenges. The parties have provided the full administrative record and briefed the motions.

**DISCUSSION**

The Court will grant the Secretary's motion and deny Gorovits's motion because the Secretary's decision to revoke Gorovits's Medicare billing privileges is supported by substantial evidence and the Secretary correctly applied the law. A Medicare provider whose billing privileges are revoked is entitled to judicial review of the decision of revocation. *See* 42 U.S.C. § 1395cc(j)(8). Judicial review of a decision by the Secretary of HHS is governed by the same standards as Social Security appeals. *See id.* § 1395cc(h)(1)(A). Judicial review is thus limited to upholding the Secretary's decision if his findings of fact are supported by substantial evidence and

he applied the correct legal standards.[6] *See* 42 U.S.C. § 405(g); *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) ("[E]ven if the Secretary's factual findings are supported by substantial evidence, this court may review whether the administrative determination was made upon correct legal standards." (citation omitted)). Review of the Secretary's decision must adhere to the pleadings and transcripts provided in the administrative record. *See* § 405(g).

As an initial matter, the Secretary's determination that Gorovits's conviction for obstruction of an investigation of health care offenses qualifies as an offense that is detrimental to the best interests of the Medicare program and its beneficiaries is supported by substantial evidence. To revoke Gorovits's billing privileges pursuant to 42 C.F.R. § 424.535(a)(3), Gorovits must have been convicted of a federal or state felony offense that CMS determined was detrimental to the best interests of Medicare and its beneficiaries within the preceding 10 years. The regulation lists enumerated crimes that meet the definition of "detrimental to the interests of Medicare" including felony crimes against persons like murder and rape, and financial crimes like extortion

---

[6] Gorovits contends the Secretary's legal conclusions are subject to review under the Administrative Procedure Act (APA) and the corresponding "arbitrary and capricious" standard. *See* Pl.'s Mot. for Summ. J. 4; *see also* 5 U.S.C. § 706(2). Courts have applied differing standards when reviewing questions of law and interpretation in HHS decisions. *See, e.g.*, *Fayad v. Sebelius*, 803 F. Supp. 2d 699, 702 (E.D. Mich. 2011) ("Section 405(g) also provides that a court must affirm the Secretary's decision 'absent a determination that the [Secretary] failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.'" (citation omitted)); *Ahmed v. Sebelius*, 710 F. Supp. 2d 167, 173 (D. Mass. 2010) ("Questions of law . . . are reviewed de novo." (citation omitted)); *Tomlinson v. Azar*, No. 19-5114, 2020 WL 376657, at *3 (W.D. Ark. Jan. 23, 2020) ("[T]he construction of a regulation by an agency tasked with its administration should be afforded deference [as applied in the Secretary's decision]." (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997))). The distinction between § 405(g) and the APA standard is not clear, however, some courts have also held that between the two standards, "it probably makes no difference." *Shah v. Azar*, 920 F.3d 987, 991 (5th Cir. 2019) (applying arbitrary and capricious standard "for the sake of argument"). In any event, the Third Circuit has stated in a precedential opinion that the appropriate standard is "whether the Secretary, in making his findings, applied the correct legal standards to the facts presented," *Friedberg*, 721 F.2d at 447, and the Court applies that standard here.

and embezzlement. *See* 42 C.F.R. § 424.535(a)(3)(ii). The list of crimes, however, is not exclusive or limited. *See id.* (listing included offenses and stating they "are not limited in scope or severity"). CMS has broad discretion in determining what crimes are sufficiently detrimental to Medicare and its beneficiaries. *See Sunsites-Pearce Fire Dist. v. Azar*, 2020 WL 3971401, at *8 (D. Ariz. July 14, 2020) ("CMS has authority to determine which acts are 'detrimental' and in doing so can 'consider the severity of the underlying offense." (citing 71 Fed. Reg. 20,760)).

In each decision in Gorovits's appeal, it was explained Gorovits lied about receiving illegal Medicare kickbacks. Her conviction was not for merely obstructing an investigation, but for obstruction an investigation into *health care offenses*, specifically antikickback violations. It was also explained that the Medicare program relies on the veracity and compliance of its providers and Gorovits's deceit and obstruction of an investigation was contrary to the best interests of the Medicare program and its beneficiaries. *See* R. at 20. Gorovits's conduct undermined trust in the Medicare program including that trust in which beneficiaries place in the financial integrity and individual physicians of the program.

The facts and circumstances regarding Gorovits's conviction were heavily considered by Novitas, CMS, the ALJ, and the Board. Pursuant to her plea agreement, Gorovits misled "federal criminal investigators who were examining the practice of Home Care Hospice paying kickbacks to medical professionals, *including herself*, for referrals of Medicare and Medicaid eligible patients for hospice care services." R. at 282, Plea Agreement ¶ 1 (emphasis added). Based on this conviction and plea, Gorovits lied to federal investigators who were trying to determine the extent of antikickback violations, and lied regarding her own criminal behavior. *See* R. at 21 (noting that even though Gorovits was not convicted of receiving kickbacks, she admitted in her plea that she did receive kickbacks for her referrals to Home Care Hospice). Because the underlying facts of

Gorovits's conviction is her deceit to federal investigators about her own receipt of kickbacks, the determination that Gorovits's conviction was detrimental to the best interests of the Medicare program and its beneficiaries was supported by substantial evidence. *Cf. Fayad v. Sebelius*, 803 F. Supp. 2d 699, 704 (E.D. Mich. 2011) (affirming Secretary's decision to revoke billing privileges for unenumerated felony conviction because "[g]iven Plaintiff's "dishonesty and demonstrated untrustworthiness in his dealings with the federal government, the Secretary reasonably concluded Plaintiff's continued participation in the Medicare program was contrary to the best interests of that program").

To the extent Gorovits suggests that because her felony conviction is not enumerated in the regulation, it cannot be used as basis to revoke her billing privileges, the Court is unpersuaded. The regulation states:

(a) CMS may revoke a currently enrolled provider . . . for the following reasons:

(3)(i) The provider . . . was, within the preceding 10 years, convicted . . . of a Federal, or State felony offense that CMS determines is detrimental to the best interests of the Medicare program and its beneficiaries.

(ii) Offenses include, *but are not limited in scope or severity to—*
(A) Felony crimes against persons, such as murder, rape, assault, and other similar crimes for which the individual was convicted, including guilty pleas and adjudicated pretrial diversions.

(B) Financial crimes, such as extortion, embezzlement, income tax evasion, insurance fraud and other similar crimes for which the individual was convicted, including guilty pleas and adjudicated pretrial diversions.

(C) Any felony that placed the Medicare program or its beneficiaries at immediate risk, such as a malpractice suit that results in a conviction of criminal neglect or misconduct.

(D) Any felonies that would result in mandatory exclusion under section 1128(a) of the Act.

42 C.F.R. § 424.535 (emphasis added). This language can only be read as providing illustrations of detrimental offenses and cannot be read as precluding any *unmentioned* offenses. All that is required to revoke billing privileges based on a felony offense conviction is a determination that the felony offense is detrimental to the best interests of the Medicare program and its beneficiaries. An offense falling within the four listed categories is sufficient to revoke billing privileges but is not necessary. And although Gorovits's offense did not require *mandatory* exclusion from the Medicare program (and thus fall within (a)(3)(ii)(D)), it does support a permissive exclusion.[7] *See* 42 U.S.C. § 1320a-7(b)(2). Even as only a permissive exclusion, the fact that Gorovits's offense resulted in her exclusion from Medicare is a relevant fact as to whether her billing privileges should also be revoked because of her conviction. The record supports the Secretary's determination

---

[7] Gorovits argues her permissive exclusion from Medicare participation is inconsistent with the revocation of her billing privileges because "HHS had already determined [she] had not been convicted of a crime sufficiently related to healthcare fraud or Federal healthcare programs to warrant mandatory exclusion." Pl.'s Mot. for Summ. J. 6. Gorovits argues her exclusion is in tension with CMS's determination that her crime was "so related to Medicare fraud that it was detrimental to the Medicare program and its beneficiaries." *Id.* The Court is unpersuaded the two findings are inconsistent and warrant vacating the Secretary's decision.

First, CMS's decision regarding Gorovits's felony conviction was not premised on it being "so related to Medicare fraud," but was based on the underlying conduct being deceitful and an actual obstruction of a federal health care investigation. CMS reasonably found her conviction was detrimental to the interests of the Medicare program to revoke her billing privileges. Whether it was related to Medicare fraud is irrelevant, because CMS stated the crime involved deceit, misleading investigators, and lying regarding the acceptance of kickbacks, a reasonable conclusion.

Second, although Gorovits's conviction did not warrant mandatory exclusion, a conviction leading to mandatory exclusion is not a required element to revoke billing privileges. Billing privileges may be revoked if the conviction is one that CMS determines is detrimental to the Medicare program and its beneficiaries. *See* § 424.535(a)(3)(ii)(D) (revoking billing privileges for convictions including, but not limited to, those that lead to mandatory exclusion). The statute governing exclusion is separate from the regulation governing revocation of billing privileges. Although a conviction related to Medicare fraud warrants mandatory exclusion, a conviction need not be related to Medicare fraud to revoke billing privileges. There is no language in Novitas, CMS, the ALJ, or the Board's decision finding Gorovits's conviction was related to Medicare fraud and thus required revocation of her billing privileges; their decisions were all premised on Gorovits's conviction being detrimental to the Medicare program and its beneficiaries.

regarding Gorovits's conviction including the fact that it provided for a permissive, rather than mandatory, exclusion from Medicare participation.

Although Gorovits argues the Secretary abused his discretion by revoking her billing privileges even though she cooperated with the Government and had no record of prior misconduct, the Court disagrees. Gorovits received a reduced sentence attributable to her cooperation with the Government and her clean record. These facts, however, do not undermine the Secretary's determination that Gorovits's conviction was detrimental to the Medicare program and its beneficiaries. The underlying facts of her conviction remain the same regardless of her assistance to the Government and former clean record. Gorovits lied to federal investigators regarding her acceptance of illegal kickbacks. This is sufficient to uphold the revocation of her billing privileges.

Next, although Gorovits argues the Secretary's decision (and the underlying regulation, § 424.535(a)(3)) is void for vagueness, because the void-for-vagueness doctrine is analyzed under the Due Process Clause and Gorovits's billing privileges are not a property interest, this claim also fails. Pursuant to the Due Process Clause, an individual cannot be deprived of property without due process of law. To succeed on a due process claim, a plaintiff must have a protectable property interest, such as a benefit or contract that the individual has a legitimate entitlement to. *See Tundo v. County of Passaic*, 923 F.3d 283, 287 (3d Cir. 2019). An individual does not have a legitimate entitlement to a benefit if the government has the discretion to deny that benefit. *See id.*

Although the Third Circuit has yet to decide this issue, the Court is persuaded by the relevant decisions from other circuit courts and concludes Gorovits has no protected property right in the continued participation and billing privileges in the Medicare program. The Fifth, Sixth, Ninth, and Tenth Circuits have determined that physicians do not have protected property interests

in the continued participation in federal health care programs. *See Shah*, 920 F.3d at 997–98; *Parrino v. Price*, 869 F.3d 392, 398 (6th Cir. 2017); *Erickson v. U.S. ex rel. Dep't of Health & Hum. Servs.*, 67 F.3d 858, 862 (9th Cir. 1995); *Koerpel v. Heckler*, 797 F.2d 858, 864 (10th Cir. 1986). Each has reasoned physicians are not the intended beneficiaries of the federal health care programs and therefore do not have any protected property interest in their continued participation. *See, e.g.*, *Shah*, 920 F.3d at 997–98. Even when physicians face income losses, those losses do not rise to the level of a protected property interest because there was no clear entitlement to the payments or reimbursements from the government. *See id.* at 998. Absent precedential authority to the contrary, the Court concludes Gorovits does not have a protected property interest in her continued participation in the Medicare program or in her billing privileges. *See id.* ("We agree with our four other sister circuits that have determined participation in the federal Medicare reimbursement program is not a property interest."). Without a protected property interest, Gorovits's void-for-vagueness claim fails.

Finally, there is no evidence in the record to support Gorovits's contention that the CMS sought to punish Gorovits because she appealed CMS's original January 26, 2017, decision to revoke her billing privileges. Gorovits argues CMS applied a stricter standard upon reviewing her appeal of the January 26, 2017, decision and by determining revocation under § 424.535(a)(3) it sought to punish her for the appeal. This argument has no support in the record. The Court can only review the administrative record and the Secretary's decision. In doing so, the Court finds the Secretary's decision on this issue is supported by substantial evidence.

The decision states the revised decision did not seek to punish Gorovits but to protect the program and program beneficiaries from fraud, abuse, and other harm. *See* R. at 25. It is further explained that the timing of the revised decision is not sufficient to show that Novitas sought to

punish Gorovits but merely shows the continued evaluation of the circumstances surrounding Gorovits's conviction. Although the revised decision came after Gorovits's appeal of the initial decision, that fact does not warrant a finding that CMS acted to punish Gorovits. Gorovits's argument regarding the timing suggests that CMS would never be able to reopen and revise its earlier decisions if a participant appeals the earlier decision. The Court declines to view the timing as decisive of CMS acting to punish Gorovits for invoking her right to appeal the earlier decision. Absent other evidence showing CMS intended to punish Gorovits, this claim fails.

**CONCLUSION**

The Secretary's decision to revoke Gorovits's Medicare billing privileges applied the correct law and was supported by substantial evidence. Gorovits lied to federal investigators regarding the fact that she had accepted illegal Medicare kickbacks and pleaded guilty to obstruction of an investigation into health care offenses. The Secretary found this conduct was detrimental to Medicare and its beneficiaries because the program relies on the veracity of its providers and thus qualified as a conviction warranting revocation of Gorovits's billing privileges pursuant to 42 C.F.R. § 424.535(a)(3). Gorovits's due process claim fails because she has not established that she has a protected property interest in her continued participation in the Medicare program or in her billing privileges. And finally, there is no evidence of CMS attempting to punish Gorovits for appealing the initial revocation decision. Accordingly, the Court will deny Gorovits's motion for summary judgment and grant the Secretary's motion for summary judgment. Judgment will be entered in the Secretary's favor.

An appropriate order follows.

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.